*In re* MARRIAGE OF ROBIN SANTA CRUZ, n/k/a Robin Croson, Petitioner-Appellee, and NOEL SANTA CRUZ, Respondent (Judith Rea, n/k/a Judith Wolff, Intervenor-Appellant).

Second District   No. 2—88—0169

Opinion filed February 7, 1989.

Robinson & Skelnik, of Elgin (Mary Robinson, of counsel), for appellant.

Bonnie M. Wheaton, of William J. Wylie & Associates, P.C., of Wheaton, for appellee.

PRESIDING JUSTICE UNVERZAGT delivered the opinion of the court:

Intervenor, Judith Rea, n/k/a Judith Wolff, appeals from the judgments of the circuit court of Du Page County of February 4, 1988, setting a schedule of unsupervised visitation between intervenor's daughter and granddaughter and of February 18, 1988, finding her guilty of wilful contempt of court for failing to comply with the visitation order. Intervenor was fined $500 and sentenced to 60 days in jail. The court's judgment was stayed pending appeal upon intervenor's posting of a $1,500 cash bond. The issues presented are: (1) whether the contempt judgment must be reversed where the February 4 order allegedly violated had been stayed by intervenor's timely motion to vacate or reconsider which was filed pursuant to section 2—1203 of the Civil Practice Law (Ill. Rev. Stat. 1985, ch. 110, par. 2—1203); (2) whether the contempt judgment must be reversed where the court erred in entering a visitation order after allowing the intervenor's counsel to withdraw but before intervenor could secure other representation; (3) whether the contempt judgment was criminal in nature and must be reversed because: (a) intervenor was denied her privilege against self-incrimination; (b) the evidence failed to prove wilful violation of the court's order beyond a reasonable doubt; (c) intervenor was not provided adequate notice; and (d) it was inappropriate to allow the opposing party's attorney to prosecute the criminal contempt case; and (4) whether intervenor's motion for change of venue should have been granted. We reverse and remand.

Previously, in *In re Marriage of Santa Cruz* (1988), 172 Ill. App. 3d 775, intervenor appealed from the circuit court's judgment finding that she did not have standing under section 601(b)(2) of the Illinois Marriage and Dissolution of Marriage Act (the Act) (Ill. Rev. Stat. 1987, ch. 40, par. 601(b)(2)) to petition for custody of her granddaughter, Christianne Rea. Christianne is the daughter of plaintiff, Robin Santa Cruz, formerly known as Robin Rea and now known as Robin Croson, and defendant, Noel Santa Cruz, who is not involved in this appeal. We affirmed the judgment of the circuit court finding that in-

tervenor did not have standing to petition for custody of Christianne. *Santa Cruz*, 172 Ill. App. 3d at 782-88.

While that appeal was pending, however, and concurrent with numerous motions filed in this court, plaintiff petitioned the circuit court for visitation with her then 23-month-old daughter, who had been placed by the circuit court in the temporary custody of intervenor during the pendency of the suit to determine standing. When the circuit court there found intervenor did not have standing, it directed that Christianne be turned over to plaintiff, and Christianne was in plaintiff's custody between November 6 and November 21, 1987. This court then entered its order staying the circuit court's order, and Christianne was returned to intervenor's custody.

The circumstances leading to the instant appeal began when plaintiff filed her petition for visitation in the circuit court on December 22, 1987. At this same time, plaintiff also had pending in this court a motion seeking, *inter alia*, visitation with Christianne or remand for a visitation hearing. In light of that fact, the circuit court declined to proceed to a hearing pursuant to section 607 of the Act, which provides for visitation between the child and the noncustodial parent unless such visitation would be an endangerment to the child's physical, mental, moral or emotional health. (Ill. Rev. Stat. 1987, ch. 40, par. 607(a).) Despite intervenor's argument that this court's stay of the circuit court's order entered in No. 2—87—1050 left intact a July 2, 1987, visitation order which provided for supervised visitation, the court—cognizant of the upcoming Christmas holidays—ruled that plaintiff would have visitation with Christianne for a full week commencing on Christmas day.

On January 4, 1988, this court denied plaintiff's pending motion which, *inter alia*, sought visitation or remand for visitation hearing. On January 21, 1988, plaintiff again filed her petition for visitation in the circuit court. The same day, after considering whether it had jurisdiction to proceed in view of this court's denial of plaintiff's motion, the court ruled the cause was properly before it. It also ruled that this was not a new proceeding, and it denied intervenor's oral motion for change of venue. A hearing was set for February 4, 1988.

In the interim, on January 29, 1988, intervenor's counsel served her by certified mail with a notice of motion and motion for leave to withdraw which was also to be heard on February 4. Intervenor received this notice on February 2. The notice advised intervenor:

> "TO: JUDITH REA n/k/a WOLFF: Be advised that to insure your proper notification on all matters pertaining to this cause, you should retain other counsel immediately or file with the

Clerk of the Court in this cause within fourteen (14) days hereof, your own supplementary appearance, stating therein an address wherein service of notice of this cause may be had upon you. Your failure to secure other counsel or to file your own appearance will result in judgment by default or dismissal of your case."

Counsel's motion asked for leave to withdraw, that intervenor be granted time to prepare and file a response to the petition for visitation, that the court continue the hearing on the petition, and that the court allow intervenor a reasonable time to secure substitute counsel.

On February 4, 1988, intervenor did not appear. Counsel advised the court that intervenor indicated that she would not appear at the hearing despite counsel's advice to her that she do so. Over plaintiff's objection that the motion was not timely and not in compliance with local rules, the court allowed intervenor's counsel leave to withdraw. It then entered a visitation order which it stated would be "without prejudice to [intervenor] to retain other counsel and come in and strike a challenge to it if she wishes to do so and set it down for a hearing." The written order allowing withdrawal provided: "That any order entered regarding visitation is without prejudice to the Intervenor and is by separate order reflecting the Court's decision after allowing the above stated withdrawl [sic]." The court ordered that plaintiff was to have visitation with Christianne from 9 a.m. to 6:30 p.m. every Tuesday, Thursday, and Saturday, commencing February 9, 1988, with transfer of possession of Christianne to take place at the Wheaton police department.

On February 5, 1988, intervenor filed pro se a "Motion to Reconsider or Vacate Order for Visitation of February 4, 1988," pursuant to section 2—1203 of the Civil Practice Law. She alleged the visitation order was improperly entered because she was not properly notified and was without counsel at the time; that the court erred in entering an order of unsupervised visitation without hearing testimony that would justify lifting the prior supervision requirement; and that the court did not have jurisdiction to enter the visitation order. Intervenor's notice of motion recited that she did not yet have an attorney and, further, that "It is my understanding according to Section 2—1203 that by filing of this Motion, the Order for visitation entered on February 4, 1988 by the Honorable Francis W. Faris is AUTOMATICALLY STAYED."

On February 9, 1988, plaintiff appeared at 1:30 p.m. and presented an emergency petition for rule to show cause alleging that intervenor had failed to produce the child for visitation that morning.

Intervenor, who was personally served by plaintiff's counsel earlier that morning, appeared with an attorney, David Keay. Keay indicated he had been notified while driving home from lunch that day that he had been contacted by intervenor concerning a rule to show cause which had been served on her at noon. He agreed to at least come to court and attempt to "translate" the petition and try to familiarize himself somewhat with the file. Keay asked for a continuance so that he could become familiar with the underlying facts. He suggested that there were arguments the court should entertain before issuing a rule due to the fact the visitation order was entered after intervenor's attorney had withdrawn.

The court issued a rule returnable in 10 days and asked Keay to impress upon intervenor that the visitation order of February 4 was valid and, notwithstanding intervenor's section 2—1203 motion, "has not been stayed." Addressing intervenor directly, the court admonished her that if she again chose to ignore its February 4 visitation order, it had the power to put her in jail for up to six months or to fine her up to $1,000.

On the return date, February 18, 1988, intervenor appeared with other counsel, Robert A. McNees. Plaintiff had also served intervenor with a petition for rule to show cause, alleging a second violation of the visitation order on February 11, 1988, and an amended petition for rule to show cause alleging the February 11 violation and a third violation on February 13, 1988. Plaintiff also noted that she had served a notice of motion indicating that intervenor's motion to reconsider would be presented for ruling at the February 18 hearing.

Intervenor tendered a written motion for continuance of everything called up that day. Intervenor's counsel, who had been retained just two days earlier, felt he needed time to become familiar with the underlying circumstances. The court denied the motion for continuance.

Following a recess, intervenor moved to vacate the rule to show cause issued on February 9, 1988, on the basis there was a pending motion to reconsider which stayed the visitation order. She argued she could not be found in contempt of court for failing to abide by the visitation order thusly stayed. Plaintiff argued intervenor's motion did not conform to local rules and it did not note a date upon which the motion would be presented. Plaintiff further argued the motion was "very clearly an effort to circumvent the order of the Court." Counsel responded that in compliance with local rules, intervenor had scheduled the motion for February 23, 1988, but that she had not yet sent notice of the date to plaintiff due to "all the confusion."

Addressing the allegations of intervenor's motion to reconsider, the court stated that intervenor properly had received notice of the February 4 hearing; that it had presided at the previous proceeding in No. 2—87—1050 which resulted in the order for supervised visitation and that supervision was not the issue in that proceeding; and finally, that it did have the authority to order visitation. Accordingly, the court found intervenor's motion to reconsider had no merit.

After denying intervenor's oral motion to file an amended motion to reconsider, the court also found intervenor's motion to reconsider was filed in bad faith and only for the purpose of delay. The court summarily dismissed intervenor's motion to reconsider, and intervenor made an offer of proof. She argued it was reasonable for her to assume that she had at least 14 days' time to get other counsel as set forth in the notice of motion for leave to withdraw, noting the provisions of Supreme Court Rule 13 allow a party up to 21 days to file a supplementary appearance (107 Ill. 2d R. 13(c)(2)).

With respect to the return of the rule issued on February 9, alleging violation of the visitation order on that date, intervenor elected to stand on her oral motion to vacate the rule on the ground she then had pending her motion to reconsider or vacate the visitation order. The court denied the motion. The court also denied intervenor's oral motion to strike and dismiss plaintiff's emergency petition for rule to show cause which led to the issuance of the February 9 rule on the ground it alleged no facts which indicate there was an emergency.

The court then proceeded on plaintiff's amended petition for rule to show cause alleging violations of the February 4 visitation order which occurred on February 11 and February 13. Intervenor asked for and received leave to file a written response to the amended petition within 21 days; however, the hearing on plaintiff's amended petition for rule to show cause commenced *instanter*.

Intervenor was called as an adverse witness. She testified she was in court on February 9, 1988, with David Keay acting as her attorney. She was aware of the terms of the February 4 visitation order, and she recalled the judge advising her that there were to be no more violations of the visitation order or he had the power to impose a jail term. She acknowledged that she failed to bring Christianne for visitation on February 11 and *February 16*, 1988.

The court then issued a rule to show cause returnable *instanter*, and intervenor's motion to continue the hearing on the rule was denied. Intervenor moved for change of venue based on the court's refusal to afford intervenor what she felt was any fair opportunity to defend by allowing her to argue her previously filed motion to recon-

sider and to file her written answer to plaintiff's amended petition for rule to show cause before forcing her to orally argue the matter. The court denied the motion.

Intervenor then stated her position that the February 4 visitation order was erroneous in that there was a supervised visitation order in effect when the appellate court ordered a stay in the case. Further, that the circuit court had jurisdiction to modify that order only if there were changed circumstances, and plaintiff's petition for visitation alleged no such changed circumstances.

The cause then proceeded to a hearing on the rules issued February 9 and that morning, February 18. Intervenor testified she received notice of her prior attorney's motion to withdraw on February 2. It was her understanding that on February 4, the motion to withdraw would be presented and her attorney would ask for time for her to secure other counsel and to file an answer to the visitation petition. She assumed that time would be allowed, since there was such short notice on the motion and since there had been no preparation on her side for a hearing on visitation. Intervenor stated she diligently sought to retain other counsel between February 4 and February 6, and that she actually had retained attorney McNees two days prior to the February 18 hearing.

Intervenor testified she prepared and filed the motion to vacate the court's visitation order of February 4. She personally called Judge Faris' secretary to schedule a hearing on the motion, and it was set for February 23. She testified she did send notice of that hearing to plaintiff's counsel. During the interval before she was able to retain substitute counsel, intervenor found and read the case *Harris v. Spencer* (1967), 86 Ill. App. 2d 41. She did not produce Christianne for visitation as required by the court's February 4 visitation order because she believed that under the *Harris* case and section 2—1203 of the Civil Practice Law her motion to reconsider or vacate the visitation order would automatically give her the chance to come to court and be heard while properly represented before the visitation order would be effective.

On cross-examination, intervenor testified she did not discuss the notice she received of her attorney's motion to withdraw with any attorney prior to the February 4 hearing. She also testified she was aware of the *Harris v. Spencer* case on February 9 when the court admonished her directly that there were to be no further violations of the February 4 visitation order.

The court found intervenor in deliberate, wilful contempt of court and ordered her to pay a fine of $500 and to serve 60 days in the

county jail. In response to intervenor's counsel's inquiry concerning an opportunity to purge, the court asked how intervenor would propose to purge herself of the contempt. Counsel for intervenor responded, "Whatever conditions your Honor cares to set." The court stated:

> "I have already imposed the terms of visitation and she has chosen and seen fit not to observe them, so I conclude only that she is going to continue to violate them. Until I am convinced that she is not going to violate them, my order is going to stand. Mr. Bailiff, take Mrs. Wolff into custody."

Intervenor then tendered her notice of appeal, and the court denied her motion for stay without bond pending appeal. The court set a $1,500 cash appeal bond, which intervenor posted.

Intervenor has moved to supplement the record with a copy of plaintiff's notice of motion and emergency petition for rule to show cause which was presented to the circuit court on February 9, and we ordered this motion to be taken with the case. Inasmuch as plaintiff has not filed any objections to the motion, and it is clear that the parties appeared in court on February 9 in response to said emergency motion, the motion is granted. 107 Ill. 2d R. 329.

Plaintiff has not filed an appellee's brief in this cause. *First Capitol Mortgage Corp. v. Talandis Construction Corp.* (1976), 63 Ill. 2d 128, provides guidelines applicable in such instances, which we elect to follow in reaching the merits.

In support of her contention that the contempt judgment must be reversed because the underlying order was stayed by her section 2—1203 motion, intervenor cites *Harris v. Spencer* (1967), 86 Ill. App. 2d 41. She also cites *In re Marriage of Humphrey* (1984), 121 Ill. App. 3d 701, in support of her contention that her motion to reconsider was facially meritorious in that the court's visitation order was entered without sufficient notice to her to secure substitute counsel.

In *Harris v. Spencer*, the trial court modified the parties' divorce decree changing custody of the parties' children from the wife to the husband. The wife obtained new counsel and filed a motion for rehearing pursuant to former section 68.3 of the Civil Practice Act, now section 2—1203 of the Civil Practice Law (Ill. Rev. Stat. 1987, ch. 110, par. 2—1203). After the rehearing motion was filed, but before the court acted upon it, the wife was found to be in contempt of court for refusing to comply with the court's order that the husband have custody of the children.

On appeal, the court determined that the modified decree was not a consent decree, and, as such, it was subject to review and could be

set aside or amended. The court also determined that the wife's motion for rehearing should have been granted since the trial court had improperly based its decision on a probation officer's report. In light of these determinations, it found the wife's motion for a rehearing was proper and had the effect of staying execution of the modified decree until the trial court ruled upon the motion.

*Harris* was recently relied on in *In re Marriage of Maroon* (1988), 165 Ill. App. 3d 529, *appeal denied* (1988), 121 Ill. 2d 571. In *Maroon*, the trial court entered a judgment dissolving the parties' marriage, awarding custody of the son to the husband and giving the wife certain specific visitation privileges, including one week at Christmas. The wife timely filed a post-trial motion pursuant to section 2—1203 of the Civil Practice Law. (Ill. Rev. Stat. 1987, ch. 110, par. 2—1203.) After having the boy visit her for one week at Christmas in Texas where she then resided, the wife decided to keep him with her. The husband filed a petition for rule to show cause why she should not be held in contempt. The wife was found to be in contempt following a hearing which was held on the rule to show cause, the wife's motion to quash the rule, and the wife's post-trial motion.

On appeal, the wife argued she should not have been held in contempt. Relying on *Harris*, the court agreed and found that because her post-trial motion was pending at the time she allegedly violated the terms of the judgment, the judgment was stayed and could not serve as the predicate for contempt. 165 Ill. App. 3d at 531.

Based on *Harris* and *Maroon*, we believe intervenor has presented a *prima facie* case of reversible error. A court has the inherent power to enforce its orders by way of contempt (*In re G.B.* (1981), 88 Ill. 2d 36, 41), and a contempt finding will not be disturbed unless it is against the manifest weight of the evidence or there is an abuse of discretion. (*In re Marriage of Logston* (1984), 103 Ill. 2d 266, 287; *In re Marriage of Page* (1987), 162 Ill. App. 3d 515, 518.) A contempt judgment based on a void order cannot be sustained, however. (*In re R.R.* (1982), 92 Ill. 2d 423, 430; *Jenner v. Wissore* (1988), 164 Ill. App. 3d 259; *People v. Buckley* (1987), 164 Ill. App. 3d 407, 412.) A void order is one entered where the court (1) did not have jurisdiction over the parties or (2) the subject matter or (3) was otherwise without the power to enter the order. *Wissore*, 164 Ill. App. 3d at 266; *People v. Huntley* (1986), 144 Ill. App. 3d 64, 68.

Under *Harris* and *Maroon*, the court's February 4 visitation order was stayed by intervenor's motion to reconsider and was, therefore, unenforceable. Consequently, intervenor's violation of it could not serve as the predicate for a contempt judgment against her. In ef-

fect, the court was "otherwise without the power" to admonish intervenor that she had to comply with an order that was stayed by operation of law. Accordingly, the court's February 18 judgment finding intervenor in contempt is reversed.

Intervenor's motion to the trial court to reconsider its February 4 visitation order was meritorious. As intervenor notes, the validity of the underlying order upon which the court's contempt judgment was based is properly before this court. (*People v. Buckley* (1987), 164 Ill. App. 3d 407; *People v. Verdone* (1985), 136 Ill. App. 3d 75.) Intervenor argues that under Supreme Court Rule 13, the judge did not have authority to allow counsel leave to withdraw and then immediately enter an altered visitation order before she was notified of the withdrawal and was able to secure other representation. In support, she cites *In re Marriage of Humphrey* (1984), 121 Ill. App. 3d 701.

■ Supreme Court Rule 13 requires an attorney to notify a client of his intention to seek leave to withdraw and to advise the client to secure other counsel or file his own supplementary appearance within 21 days after entry of the order of withdrawal in order to insure notice of any action in the cause. (107 Ill. 2d R. 13.) In *Humphrey*, in the absence of any indication that Rule 13 was even minimally complied with, the court reversed an order of the circuit court which imposed sanctions against the husband for discovery violations. In that case, the circuit court had granted the husband's counsel leave to withdraw and held a hearing on the wife's motion for sanctions on the same day. Neither the husband nor any attorney representing him was present at the hearing.

Here, although intervenor was notified of her counsel's intention to seek leave to withdraw, the record shows no notification to her that he had, in fact, been allowed to withdraw as required by the rule. (107 Ill. 2d R. 13(c)(4).) Although advised she should secure other counsel or file her own appearance within 14 days in order to insure notification on all matters pertaining to the cause and to avoid judgment by default or dismissal, the court here entered its visitation order only two days after intervenor received the notice of her attorney's intention to withdraw. The time limit for notice specified in Supreme Court Rule 13 is 21 days. More important than the number of days allowed, however, is the fact that, as in *Humphrey*, neither intervenor nor any attorney representing her was present at the proceeding which resulted in the order challenged on appeal.

■ In the only other case we have found concerning Supreme Court Rule 13, *First National Leasing Corp. v. E.T.P. of Chicago, Inc.* (1987), 158 Ill. App. 3d 882, this court determined that noncom-

pliance with the notice provisions of the rule is not a ground for vacating a judgment pursuant to a motion filed under section 2—1401 of the Civil Practice Law (Ill. Rev. Stat. 1985, ch. 110, par. 2—1401) inasmuch as such motions are directed to errors of fact, not errors of law. This court noted that the provisions of Supreme Court Rule 13 "are 'purely procedural provisions designed to facilitate the forward progress of the action when withdrawal has been permitted.' [Citation.]" (*First National Leasing*, 158 Ill. App. 3d at 886.) Intervenor's motion here, however, was brought pursuant to section 2—1203 of the Civil Practice Law, which is addressed to the sound discretion of the trial court. Ill. Rev. Stat. 1987, ch. 110, par. 2—1203; *In re Marriage of Hopkins* (1982), 106 Ill. App. 3d 135.

■ After considering the record of proceedings below and intervenor's citation to the *Humphrey* case, we conclude under *Talandis* that she has presented a *prima facie* case of reversible error in the court's entry of the visitation order. Accordingly, the court's February 4 judgment must also be reversed, and the cause remanded for further proceedings. In light of the preceding, it is unnecessary to address intervenor's contentions concerning the criminal nature of the court's contempt judgment.

Intervenor next argues that her motion for change of venue should have been granted. Based on comments made by the judge to the effect that he believed intervenor was engaging in "self-help" and had "engaged every artifice, every possibility" to avoid its visitation order, intervenor asserts he had prejudged her guilt and, therefore, her oral motion for change of venue should have been granted. We disagree.

■ Notwithstanding the fact intervenor's motion was oral and not supported by affidavit as required for a substitution of judge for cause under either the Civil Practice Law or the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1987, ch. 110, pars. 2—1001(a)(2), (c); Ill. Rev. Stat. 1987, ch. 38, par. 114—5(d)), it has been held that the burden rests not upon the court to justify retention of a case before it, but upon the one seeking substitution of judge to show that prejudice will result if his motion is not granted. (*Hoga v. Clark* (1983), 113 Ill. App. 3d 1050.) "Moreover, the alleged bias or prejudice of a trial judge to be disqualifying must be shown to have stemmed from an extra-judicial source and result in an opinion on the merits on some basis other than what the judge learned from his participation in the case. [Citation.] *** [A]lleged erroneous rulings and findings made by the trial judge in the course of the trial *** are not in themselves sufficient reasons to believe that the judge had a personal bias or

prejudice for or against him [citations] ***." *People v. Massarella* (1979), 80 Ill. App. 3d 552, 565.

At the hearing here, intervenor explicitly stated her motion for change of venue was based on "the events that have transpired in court today," pointing to the court's unfairness toward her, *i.e.*, her lack of opportunity to prepare, its denial of "each and every motion," and the fact she had to argue orally the matter of the plaintiff's amended rule to show cause the same day the rule was issued.

In response to intervenor's argument, the judge acknowledged that although his rulings might appear prejudicial, he assured her he would keep an open mind and would listen to any appropriate arguments, but would not tolerate self-help to avoid valid orders and it was his opinion that "that is what is going on here."

The instant cause is readily distinguished from the cases cited by intervenor in support of her position for reversal. In *People ex rel. Przyblinski v. Scott* (1959), 23 Ill. App. 2d 167, *aff'd* (1960), 19 Ill. 2d 500, at their first appearance before the judge and before he had heard any evidence in the cause, the judge commented to the respondents charged with election fraud, " 'You cause criticism of our ability to run an honest election. You make me bow my head in shame,' " and " 'You have committed a serious offense.' " (*Przyblinski*, 23 Ill. App. 2d at 169.) In *Johnson v. Johnson* (1975), 34 Ill. App. 3d 356, the judge personally participated in effecting a pretrial agreement concerning the custody and visitation rights of the parties as to their two boys. When the wife reneged on several of the conditions upon which the agreement was premised and sought to have custody of the boys in her new home in North Carolina, the court, before hearing any evidence, announced it intended to take the boys away from her. *Johnson*, 34 Ill. App. 3d at 360.

The judge here had extensive knowledge not only of the instant cause, but he also had presided over the cause to determine intervenor's standing to petition for custody of Christianne. Although, as intervenor asserts, no finding of contempt was entered in that cause, the record shows a rule to show cause was issued there on plaintiff's emergency petition for rule to show cause. The petition alleged violation by the intervenor of the court's July 2, 1987, order for supervised visitation between plaintiff and Christianne in the presence of Pastor Schmidgall. Plaintiff's counsel's affidavit filed in support of that emergency petition for rule to show cause alleged, based on information from the pastor's office, that intervenor represented to the pastor's office that there had been "dramatic changes" in the custody suit and that she unilaterally determined there would be no further visitation.

The hearing to be held on that rule was set for October 23, but all matters other than the issue of intervenor's standing were deferred on that date. This court then stayed further proceedings in the trial court upon intervenor's appeal of the trial court's finding that she did not have standing to petition for custody of Christianne.

■ Based on the record here, it is apparent the judge had not yet made any decision on the merits of the cause as of that point in the proceedings. Although he had personal knowledge of the proceedings from their inception, he stated he would keep an open mind and would listen to any appropriate arguments. A trial judge is in the best position to determine whether it has become prejudiced against a party, and, in light of the judge's assurances of impartiality, we conclude intervenor failed to meet her burden of establishing cause to substitute a new judge. See *People v. Hall* (1986), 114 Ill. 2d 376, 405-06.

The February 4 and 18 judgments of the circuit court of Du Page County are reversed, and the cause is remanded for further proceedings consistent with this opinion. As we previously noted, intervenor's motion to supplement the record on appeal is granted.

Reversed and remanded.

LINDBERG and INGLIS, JJ., concur.